IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEXANS INC. and BERK-TEK LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 12-1491-SLR |
| | ) | |
| BELDEN INC., BELDEN TECHNOLOGIES, INC., and BELDEN TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

Steven J. Balick, Esquire, Tiffany Geyer Lydon, Esquire, and Andrew C. Mayo, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: James S. Blank, Esquire, and David Soofian, Esquire of Kaye Scholer LLP.

Adam W. Poff, Esquire, and Pilar G. Kraman, Esquire of Young Conaway Stargatt & Taylor, LLP. Counsel for Defendants. Of Counsel: Matthew B. Lowrie, Esquire, and Aaron W. Moore, Esquire of Foley & Lardner LLP.

---

**MEMORANDUM OPINION**

Dated: August 6, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Nexans Inc. ("Nexans") filed this declaratory judgment and patent infringement action against Belden Inc., Belden Technologies, Inc., and Belden Technologies, LLC (collectively, "Belden"). (D.I. 5) Nexans seeks declaratory judgment of noninfringement and invalidity of U.S. Patent Nos. 6,074,503 ("the '503 patent"), 7,135,641 ("the '641 patent"), and 7,977,575 ("the '575 patent") (*Id.* at ¶¶ 27, 29, 31-35, 38-43) and affirmatively asserts infringement of U.S. Patent No. 5,796,046 ("the '046 patent"). (*Id.* at ¶¶ 37, 46-49) In an amended complaint, Nexans also seeks declaratory judgment of noninfringement and invalidity of U.S. Patent No. 7,663,061 ("the '061 patent"). (*Id.* at ¶¶ 36-37)

Currently before the court is Nexans' motion to enjoin Belden from prosecuting a related action filed in another district, Belden's motion to dismiss the declaratory judgment claims in this action in favor of that related action, and Belden's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, strike the amended complaint. (D.I. 12; D.I. 18, D.I. 24) The court has jurisdiction over this matter pursuant to 28 U.S.C §§ 1331, 1338(a), 2201, and 2202.

## II. BACKGROUND

Nexans and Belden are Delaware corporations that use, make, and/or sell data cables. (D.I. 5 at ¶¶ 1-4) On April 3, 2012, Belden sent a letter ("the warning letter") to Berk-Tek LLC ("Berk-Tek"), a division of Nexans, accusing Berk-Tek of using Belden's

patented technology.[1] (*Id.* at ¶¶ 13-14) In the warning letter, Belden also referenced previous litigation against Superior Essex Inc. and Superior Essex Communications LP (collectively, "Superior Essex"), explaining that, at the conclusion of that litigation, Superior Essex elected to enter into a license agreement, including payment of a royalty.[2] (*Id.* at ¶ 16)

Following receipt of the warning letter, Nexans and Belden entered into a Protected Communications and Standstill Agreement ("the Standstill Agreement") on June 25, 2012. (*Id.* at ¶ 19) On September 21, 2012 counsel for the parties met in New York City. (*Id.* at ¶ 20) The parties then kept in contact until the Standstill Agreement expired on October 31, 2012. (*Id.* at ¶¶ 21-23)

Nexans filed the instant suit on November 19, 2012, with claims for declaratory judgment of noninfringement and invalidity of the '503, '641, and '575 patents and claims for infringement of the '046 patent. Two days later, on November 21, 2012, Belden filed a parallel suit against Nexans in the Southern District of Indiana ("the Indiana action") alleging infringement of the '503, '641, and '575 patents, as well as the '061 patent (collectively, "the Belden patents"). (D.I. 13 at 2) On the same day, Belden filed a separate action against Hitachi Cable America Inc. and Hitachi Cable Manchester, Inc. in the Southern District of Indiana alleging infringement of the Belden

---

[1]On April 17, 2013, the parties stipulated to add Berk-Tek as a plaintiff. (D.I. 40)

[2]Belden has filed three suits against Superior Essex in this court. Belden filed its first suit against Superior Essex on January 29, 2008 alleging infringement of the '503 patent. (D.I. 5 at ¶ 24) On October 31, 2008, Belden filed a second suit against Superior Essex and other parties, alleging infringement of the '641 and the '503 patents. (*Id.* at ¶ 25) Finally, on August 1, 2011, Belden filed a third suit against Superior Essex over the '061 and the '575 patents. (*Id.* at ¶ 26)

patents ("the *Hitachi* litigation"). (*Id.*) On December 2, 2012, Nexans filed an amended complaint in the instant action to add the '061 patent to its claims for declaratory judgment. (*Id.*)

## III. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Not only may the lack of subject matter jurisdiction be raised at any time, it cannot be waived and the court is obliged to address the issue on its own motion. *See Moodie v. Fed. Reserve Bank of NY*, 58 F.3d 879, 882 (2d Cir. 1995). Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *See Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000).

Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). *See* 2 James W. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 1997). Under a factual attack, the court is not "confine[d] to allegations in the . . . complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Grp.*, 227 F.3d at 69 (quoting *Mortensen*, 549 F.2d at 891). Although the court should determine subject matter jurisdiction at the outset of a case, "the truth of jurisdictional allegations need not

always be determined with finality at the threshold of litigation." 2 Moore § 12.30[1]. Rather, a party may first establish jurisdiction "by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection)." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 537-38 (1995) (citations omitted).

**B. Motion to Enjoin**

It has long been settled that "a United States district court which first obtains jurisdiction of the parties and issues may . . . enjoin proceedings involving the same issues and parties begun thereafter in another United States district court." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 927 (3d Cir. 1941). While the invocation of this "first-filed" rule is the norm, exceptions are not rare, and district courts are given discretion in retaining jurisdiction "when justice or expediency requires." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988).

Although courts hearing patent cases must apply "the procedural law of the regional circuit in matters that are not unique to patent law, . . . the regional circuit practice need not control when the question is important to national uniformity in patent practice." *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004). The Federal Circuit has held that "injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit." *Id.* at 1331. In this context, co-pending

patent infringement and declaratory judgment actions are those involving "the same patents and the same parties." *Id.* at 1328.

## IV. DISCUSSION

Nexans and Belden dispute whether the declaratory judgment claims in this action should be litigated in the instant action or in the Indiana action, and whether the declaratory judgment claims regarding the '061 patent were properly added in the amended complaint. As a threshold matter, Nexans chose a traditional and legitimate venue for the instant action, that is, Belden's state of incorporation.

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, Strike the Amended Complaint

Belden asserts that the court has no jurisdiction over the '061 patent, which was added in Nexans' amended complaint, because there is no actual controversy regarding that patent. (D.I. 19 at 11) In the alternative, Belden contends that Nexans' amended complaint should be stricken because it addresses a case or controversy that occurred after the filing of the original complaint. (D.I. 25 at 6)

According to Belden, the case or controversy with respect to the '061 patent did not arise until Belden's filing of the Indiana action, which asserted, *inter alia*, infringement of the '061 patent. (D.I. 25 at 6) Since the filing of the Indiana action occurred after the filing of the original complaint in this action, Belden contends that the amended complaint in this action must be treated as a supplemental complaint that does not relate back to the events that are described in the original complaint. (*Id.*)

Contrary to Belden's assertions, even if the amended complaint were considered instead to be a supplemental complaint,[3] said complaint relates back pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), for it was not the filing of the Indiana action that caused a case or controversy to arise out of the '061 patent, but the same events that led to the filing of the original complaint that caused the case or controversy. To wit, on April 3, 2012, Belden sent the warning letter to Nexans stating, in part, "Belden has secured judgments that certain of its patents are valid, enforceable and infringed by Superior Essex" and "Belden has patents directed to (among other things) data cables (or their method of manufacture) with a tape separator . . . cross-web separator . . . separator with a ribbed jacket." (D.I. 29 at 7) This general infringement accusation did not name any specific patents. During a September 21, 2012 meeting among the parties, Belden separated its patents into two groups, stating that the '503, '641, and '575 patents could fall into either group. (D.I. 27 at ¶ 6) Belden further stated that other patents, including the '061 patent, may also fall into these groups and cover Nexans' products. (*Id.*)

When an actual controversy exists over one patent, it can also cover patents relating to the same technology between the same parties. *See Teva Pharms. USA Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1344-45 (Fed. Cir. 2007). The '575 patent is nearly identical to the '061 patent, possessing the same title, the same inventors, and

---

[3]*See Innovative Therapies, Inc. v. Kinetic Concepts*, 599 F.3d 1377, 1383 (Fed. Cir. 2010) (stating that a supplemental complaint adds issues based on events that occurred after the filing of the original complaint).

substantially the same specification.[4] (D.I. 5, exs. C, D) In light of the relationship between the '575 and '061 patents and the nature of the discussions, the general dispute gave rise to the specific controversy over the '061 patent.

Belden's litigation history with other parties based on related patents also has relevance to the determination of declaratory judgment jurisdiction. *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 899-901 (Fed. Cir. 2008). In three separate instances, Belden filed lawsuits related to the cable technology at issue in the instant case, including a suit for infringement of both the '061 and the '575 patents. (D.I. 29 at 12) Given this pattern of litigation, it would have been reasonable for Nexans to believe that the '061 patent was related to the controversy between the parties. Accordingly, the court denies Belden's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, strike the amended complaint.

**B. Motion to Enjoin and Cross-Motion to Dismiss the Declaratory Judgment Claims**

Nexans also seeks to enjoin Belden from prosecuting the Indiana action, arguing that, under the first-filed rule, the instant action should be litigated in favor of the Indiana action. (D.I. 5) Belden's cross-motion seeks dismissal of the declaratory judgment claims in the Delaware action in favor of prosecuting the Indiana action. (D.I. 18)

**1. First-filed rule**

The Federal Circuit prefers "to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy and the just and effective disposition of disputes, require otherwise."

---

[4]The '575 patent is a continuation of the '061 patent.

*Genentech*, 998 F.2d at 937, *rev'd on other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). If applied, the rule counsels that a later-filed action involving the same controversy should be dismissed, transferred or stayed in favor of the first-filed action. *See id.* at 938. "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *EEOC*, 850 F.2d at 971.

The first-filed rule gives precedence to a first-filed declaratory judgment action over a later-filed infringement action "when the declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding . . . ." *See Genentech*, 998 F.2d at 938. It applies to mirror-image litigation that, if resulting in two conflicting judgments, may require separate appeals. *See Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d. 376, 384 (D. Del. 2012) (citing *Hazeltine*, 122 F.2d at 930).

The Indiana action asserts infringement of the Belden patents, which are the same patents named in the declaratory judgment claims of the instant action. (D.I. 13 at 2) Although the declaratory judgment claims related to the '061 patent were added in the instant action after the patent was asserted in the Indiana action, as discussed *supra*, the controversy regarding the '061 patent relates back to the original filing date of the instant action. As a result, the declaratory judgment claims in the instant action would resolve the same controversy as the Indiana action, which is a mirror-image litigation. Therefore, despite the later addition of the '061 patent to the amended complaint, the Delaware action is the first-filed action to the later-filed Indiana action.

**2. Exceptions to the first-filed rule**

The determination that the instant action is the first filed, however, does not necessarily end the inquiry. Belden argues that exceptions to the first-filed rule apply in this case. Factors that have been regarded as proper bases for departing from the first-filed rule include bad faith, forum shopping, when the second-filed action has "developed further than the initial suit," and "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *EEOC*, 850 F.2d at 971 (citations omitted). "Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *Id.* at 976–79.

Belden contends the first-filed rule should not apply because the instant action is anticipatory. The court has recognized that "a suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Woodbolt Distribution, LLC v. Natural Alts. Int'l, Inc.*, Civ. No. 11-1266, 2013 WL 247041, at *4 (Jan. 23, 2013). According to Belden, the parties were engaged in serious negotiations prior to the filing date of the instant action. (D.I. 19 at 6) Nexans then filed this action within three weeks of the Standstill Agreement's expiration and stated in its complaint that it was "reasonably apprehensive of suit by Belden." (*Id.*) Nexans, however, asserts that Belden can point to no specific and concrete threat of imminent litigation. (D.I. 26 at 4-5) In addition, Nexans argues that the time line does not give rise to an inference that the instant action was anticipatory because Belden could have easily filed suit in the 19 days that elapsed between the expiration of the

Standstill Agreement and the filing of the instant suit if it had intended to do so. (D.I. 26 at 6)

In other cases where the time line after the expiration of an agreement was less protracted, courts have found that there was no anticipatory filing. *See, e.g., Oak Assocs., Ltd. v. Palmer*, Civ. No. 05-4210, 2006 WL 293385, at *4 (E.D. Pa. 2006) (stating there was no race to the courthouse when an action was filed 12 days after the agreement expired); *but see EEOC*, 850 F.2d at 977 (holding that filing suit three days prior to the end of a grace period was anticipatory). Here, there is no evidence of record that Nexans had received any concrete indications of an imminent lawsuit. In fact, Doug Brenneke, Belden's Vice President of Research and Development, stated in his declaration that Belden tried to continue settlement negotiations after the expiration of the Standstill Agreement and did not believe the parties were at an impasse – indications that an infringement lawsuit was not imminent. (D.I. 20 at ¶ 4) Therefore, the court does not find that the instant action was anticipatory.

Belden next argues that the instant suit, if not anticipatory, runs directly counter to the objectives of the Declaratory Judgment Act because it was filed during the course of settlement negotiations and in bad faith, with a nefarious motive to gain the upper hand in negotiations. (D.I. 19 at 7-8) The Declaratory Judgment Act specifically allows declaratory judgment actions for parties facing accusations of patent infringement to "clear the air" regarding their accused products. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005) (internal quotation marks omitted) (stating that a party that is "reasonably at legal risk because of an unresolved dispute" can obtain judicial resolution of the dispute without waiting for the other side to file an action); *see*

*also Micron*, 518 F.3d at 902 ("The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." (internal quotation marks omitted)). The parties dispute whether there were ongoing negotiations at the time the instant suit was filed. (D.I. 19 at 7-8; D.I. 26 at 8; D.I. 27 at ¶ 8) From Belden's perspective, settlement discussions were still ongoing, despite the expiration of the Standstill Agreement, because there were no indications that the parties were at an impasse. (D.I. 19 at 8; D.I. 20 at ¶ 4) Nexans contends that, as of November 1, 2012, Nexans was no longer pursuing negotiations with Belden. (D.I. 26 at 8; D.I. 27 at ¶¶ 7-8)

According to the record, as the October 31, 2012 expiration date approached, each party requested certain preliminary information from the other party. (D.I. 27 at ¶ 6) Emails from Belden on November 1 and November 14, 2012 indicated that it would not be able to provide the information requested by Nexans. (*Id.* at ¶¶ 7-8, ex. E) Nexans did not respond to Belden's November 1, 2012 email and, although the parties on November 15, 2012 discussed the possibility of having another meeting, no meeting was ever set up. (*Id.* at ¶ 8; D.I. 20 at ¶ 4) Based on the undisputed expiration of the Standstill Agreement, Belden's inability to provide Nexans' requested information, and the absence of any negotiations thereafter, the parties were not engaged in ongoing negotiations at the time the instant action was filed. Therefore, there is no indication that Nexans' filing of the instant action was done in bad faith or to gain an upper hand in negotiations. Rather, the filing of the instant action falls within the objectives of the Declaratory Judgment Act.

As another basis for the court to depart from the first-filed rule, Belden accuses Nexans of forum shopping. Nexans allegedly filed the instant action in Delaware in part because Belden had previously litigated similar technology in Delaware with a less than favorable outcome for some of its claims. (D.I. 19 at 13) The court declines, however, to characterize a plaintiff's choice of venue as "forum shopping" when, by essentially moving to transfer venue, a defendant is doing the same thing – choosing a venue that it believes to be more favorable to its claims for whatever reason. *See Cellectis*, 858 F. Supp. 2d at 385.

Finally, neither the Indiana action nor the *Hitachi* litigation has advanced any further than the Delaware action. (D.I. 13 at 12) This consideration also does not warrant a departure from the first-filed rule.

**3. Additional considerations**

Since the first-filed suit rule "will not always yield the most convenient and suitable forum . . . the trial court must [also] weigh the factors used in a transfer analysis as for any other transfer motion." *Micron*, 518 F.3d at 904. These factors include "the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." *Id.*

Belden avers that the more appropriate forum is Indiana because its witnesses reside there. (D.I. 19 at 8-9) Belden's prior choice to litigate the same patents in this court, however, detracts from its argument citing the convenience and availability of its witnesses. *See Cellectis*, 858 F. Supp. 2d. at 385 (stating that a party should not oppose litigating in a court in which it had previously litigated without complaint). As

such, the court does not give undue weight to the consideration of the convenience and availability of witnesses.

Belden further contends that the instant action should be dismissed in favor of the Indiana action because the Indiana action could be consolidated with the *Hitachi* litigation that is also pending in Indiana. (D.I. 19 at 10-11) The Federal Circuit has cautioned that "a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction. If . . . a patent holder could simply name another defendant . . . to the later filed infringement, then the Supreme Court's more lenient standard for the declaratory judgment plaintiff would lose its primary intended effect." *Micron*, 518 F.3d at 903. Although the Indiana action is not a broader infringement suit than the instant action because it involves the same patents and the same parties, the court shares the concern that, akin to simply naming other defendants, filing another infringement suit on the same patents against other defendants should not be given much weight in deciding whether to apply the first-filed rule. Accordingly, the possibility of consolidation, alone, is insufficient to warrant departure from the first-filed rule in this case.

Other considerations of judicial efficiency also do not require departure from the first-filed rule. Since this court has previously had the Belden patents before it, it is at least as familiar with them than the Indiana court, and neither court is familiar with Nexans' accused products. In addition, dismissal of the declaratory judgment claims in favor of the Indiana action would still leave Nexans' affirmative claim for infringement of its patent in the instant action and require the parties to litigate in two different separate courts. Therefore, the facts of this case do not warrant an exception to the first-filed

rule. There is no reason that it would be unjust or inefficient to continue the instant action rather than the Indiana action. The court grants Nexans' motion to enjoin Belden from prosecuting the later-filed Indiana action and denies Belden's motion to dismiss the declaratory judgment claims.

## V. CONCLUSION

For the foregoing reasons, the court denies Belden's motion to dismiss for lack of subject matter or, in the alternative, strike the amended complaint (D.I. 24). The court also grants Nexans' motion to enjoin (D.I. 12) and denies Belden's motion to dismiss the declaratory judgment claims (D.I. 18). An appropriate order shall issue.